**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**FORT WORTH PARTNERS, LLC**                                              **PLAINTIFF**

**V.**                              **CASE NO. 5:22-CV-05181**

**NILFISK, INC. and**
**NILFISK HOLDING A/S, a Danish Corporation**                  **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

This case returns to this Court on remand to reconsider a portion of the Court's damages award following its bench trial. In 2022, a tornado destroyed a warehouse owned by Plaintiff Fort Worth Partners, LLC ("FWP") and leased to Defendants Nilfisk, Inc. and Nilfisk Holdings A/S (collectively, "Nilfisk"). Under the terms of the Lease, Nilfisk was required to maintain full replacement cost insurance on the building, which it failed to do. FWP sued Nilfisk for breach of contract to recover the replacement costs in excess of Nilfisk's insurance coverage. The Eighth Circuit reversed the Court's award of over $5 million in "unrebutted costs" and remanded for the Court to explain this portion of the damages. (Doc. 139-1, p. 11). The Court ordered simultaneous briefing on the issue of unrebutted costs, which the Court has considered in its calculations below. *See* Docs. 144 & 145. The Court finds a slight upward adjustment of its damages award is warranted based on these calculations. The Eighth Circuit also remanded FWP's motion for appellate attorneys' fees. (Doc. 140). FWP's motion is **GRANTED IN PART AND DENIED IN PART**.

**I.  UNREBUTTED COSTS**

At the bench trial on damages, Nilfisk's expert Jeff Marcussen testified that he generally agreed with FWP's expert Kevin McMahon's estimate, apart from a number of

1

categories that were not included in what the Court called "unrebutted costs." (Doc. 93, p. 251:1–18). The Court therefore includes all the line-item cost estimates in Mr. McMahon's report that are not encompassed by the previous award. The Court will not award costs for Mr. McMahon's line items for roof and elevations. *See* Pl.'s Ex. 6, p. 109. While Mr. McMahon's report breaks these items out separately from the $7 million line item attributed to "superstructure," Mr. McMahon testified that Mr. Marcussen's approximately $7 million estimate for a pre-engineered metal building was "fair" and "reasonable," and Mr. Marcussen testified that such a building would include the "main structural framing components, . . . a metal panel system around the exterior of the building, as well as a metal roof and the other miscellaneous components that go with that." (Doc. 93, p. 188:22–189:10; *id.* at p. 378:7–19). The Court therefore accepts the following line-item costs from Mr. McMahon's report:

| Line Item | Cost |
|---|---:|
| General Conditions | $940,111.64 |
| Fence | $18,856.00 |
| Fire Suppression | $811,000.00 |
| Mechanical | $514,676.60 |
| Plywood Separation | $55,290.40 |
| Modular Offices | $1,140,445.60 |
| Main Level Improvements | $522,206.44 |

(Pl.'s Ex. 6, pp. 109–10).

The experts agree that a $500,000 contingency fee is appropriate here. (Pl.'s Ex. 6, p. 107; Doc. 144, p. 8). The costs encompassed within "unrebutted costs" also included permits, fees, and taxes. Consistent with Mr. Marcussen's testimony that he generally agreed with Mr. McMahon's report, the Court will also award Mr. McMahon's estimated $51,050 in permits. Mr. McMahon calculated the remaining fees and taxes as a percentage of the total line-item costs. The Court will award these costs at the same rates

as Mr. McMahon's estimate: bonding/insurance – 1%; sales tax – 9.75%;[1] architecture fees – 3%. As summarized in the table below, this results in a full replacement cost award of $12,886,009.37, about $15,000 more than the Court's previous award of $12,870,528.74. (Doc. 101, p. 41).

| Category | Line Item | Damages Award |
|---|---|---|
| Previously Awarded | Demolition | 732,000.00 |
| | Metal Superstructure | 7,138,611.89 |
| | Electrical | 2,982,112.75 |
| Unrebutted Line Items | General Conditions | 940,111.64 |
| | Fence | 18,856.00 |
| | Fire Suppression | 811,000.00 |
| | Mechanical | 514,676.60 |
| | Plywood Separation | 55,290.40 |
| | Modular Offices | 1,140,445.60 |
| | Main Level Improvements | 522,206.44 |
| Line-Item Subtotal | | $14,855,311.32 |
| Additional Costs | Contingency Fee | 500,000.00 |
| | Permits | 51,050.00 |
| | Bonding/Insurance (1%) | 148,553.11 |
| | Sales Tax (9.75%) | 692,331.78 |
| | Architecture Fee (3%) | 445,659.34 |
| Overhead & Profit (10%) | | 1,485,531.13 |
| Nilfisk's August 2022 Payment | | (5,292,427.32) |
| **Total** | | **$12,886,009.37** |

---

[1] Mr. McMahon's estimate did not award sales tax on the entire line-item subtotal, nor does he state the total value of items on which taxes should be assessed, but this value is readily ascertainable via a little arithmetic. Mr. McMahon estimated a total of $984,171.39 in taxes on three categories of taxes (material sales tax, services sales tax, and storage rental tax), each at the same rate of 9.75%. (Pl.'s Ex. 6, p. 108). Dividing by 0.0975, the Court finds that the cost of the items underlying Mr. McMahon's estimate was $10,094,065.50, which is approximately 47.8% of his line-item subtotal of $21,119,155.04. The Court therefore awards sales taxes at a rate of 9.75% on 47.8% of its line-item subtotal.

(Pl.'s Ex. 6, pp. 109–10; Doc. 101, p. 41). The Court also previously awarded $1,649,725.37 in unpaid rent and $54,544.42 in other Lease obligations. (Doc. 101, pp. 41–42). This results in a total damages award to FWP in the amount of $14,590,279.16.

## II.  APPELLATE ATTORNEYS' FEES AND EXPENSES

The Eighth Circuit also remanded FWP's motion for attorneys' fees on appeal for this Court's consideration. (Doc. 140). The Court has reviewed FWP's motion and affidavit (Docs. 141 & 142) and the relevant filings before the Eighth Circuit.

Under the Lease, "[i]f either party brings any action or legal proceeding for damages for an alleged breach of any provision of this Lease, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs to be fixed and determined by the court in such action or proceeding." (Doc. 2-1, p. 21, Section 23.12 (cleaned up)). Arkansas Code § 16-22-308 provides that "[i]n any civil action to recover for breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court" (cleaned up). Finally, Federal Rule of Civil Procedure 54(d) provides for the award of both costs and attorneys' fees as permitted by law.

Nilfisk argues that appellate attorneys' fees are not available under Arkansas law in a breach of contract action unless the contract specifically provides for them. Arkansas Code § 16-22-308 authorizes attorneys' fees in a breach of contract action, but the Arkansas Supreme Court has held that § 308 does not authorize attorneys' fees for legal services rendered on appeal. *Mosley Mach. Co. v. Gray Supply Co.*, 310 Ark. 448, 449 (1992) (per curiam). However, the Arkansas Supreme Court has also held that its cases foreclosing appellate fees under § 308 "do not control the award of attorney's fees" in cases that "involve a written agreement specifically providing for the payment of attorney's

4

fees." *Griffin v. First Nat. Bank of Crossett*, 318 Ark. 848, 856 (1994). Instead, "such an agreement is enforceable in accordance with its terms." *Id.*

Nilfisk argues that the Lease's fee clause does not extend to appellate fees. Nilfisk's own case on point demonstrates that this conclusion is incorrect. In *Griffin*, the prevailing party in a breach of contract action sought appellate attorneys' fees under a guaranty for "all expenses, legal and/or otherwise (including court costs and attorney's fees, paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty)." 318 Ark. at 850. The Arkansas Supreme Court held that, "[i]f the agreement is given effect, it includes attorney's fees and expenses" incurred on appeal. *Id.* at 855.

Similarly, the Lease here provides that "the prevailing party shall be entitled to recover . . . reasonable attorneys' fees and costs" in "any action or legal proceeding for damages for an alleged breach of any provision of this Lease . . . or to enforce, protect or establish any term, condition or covenant of this Lease or right of either party." (Doc. 2-1, p. 21, Section 23-12 (cleaned up)). Likewise, the Guaranty provides that "Guarantor promises to pay all of Landlord's expenses, including, without limitation, attorneys' fees and costs, incurred by Landlord in enforcing the terms and conditions of either or both of the Lease and this this Guaranty." (Doc. 2-3, p. 10, Section 9.2). Neither of these provisions limits attorneys' fees to trial awards; both use inclusive language—"any action or legal proceeding," "all of Landlord's expenses"—which, fairly read, entitles the prevailing party (or the Landlord) to appellate attorneys' fees.

Nilfisk also argues that FWP is not entitled to appellate attorneys' fees because FWP's success before the Eighth Circuit was mixed, so FWP should not be considered the prevailing party on appeal. The Court disagrees.

> It transpires frequently that in the verdict each party wins on some of the issues and as to such issues he prevails, but the party in whose favor the verdict compels a judgment is the prevailing party. Each side may score but the one with the most points at the end of the contest is the winner, and . . . is entitled to recover his costs.

*Marcum v. Wengert*, 344 Ark. 153, 162–63 (2001). FWP successfully defended the judgment in its favor on appeal and secured a modest increase in its award on remand to this Court. It is the prevailing party and is entitled to a fee award as such.

In determining whether the fees billed by FWP's counsel are reasonable, the Court considers the following factors set forth by the Arkansas Supreme Court in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229–30 (1990), and cited to with approval by the Eighth Circuit, *see All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 521 (8th Cir. 2009): the amount of time counsel invested in the lawsuit; the appropriateness of counsel's rates, given the experience and ability of the attorneys; the time and labor required to perform the legal services properly; the amount potentially at issue in the case; the results obtained; the novelty and difficulty of the issues involved; and the prevailing rate customarily charged in this area for similar legal services.

FWP seeks $193,869.50 in attorneys' fees. As in earlier proceedings, the Court agrees with Nilfisk that some of FWP's attorney and support staff rates are out of step with the prevailing rate in Northwest Arkansas for similar legal services. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value

6

of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). The Court considers the number of hours billed in this case reasonable, but will adjust the rates charged for Mr. Ney's services and the paralegals who performed work on this case to $400 per hour and $75 per hour, respectively. This results in a total lodestar calculation of $191,457.[2]

Nilfisk also argues that the FWP's fees should be reduced to account for its limited success on appeal. Nilfisk directly appealed the Court's bench trial order, arguing that FWP was not entitled to any recovery under the Lease because its claim was either time-barred or barred by the doctrine of avoidable consequences. The Eighth Circuit rejected these arguments.

Alternatively, Nilfisk asked the Eighth Circuit to vacate this Court's award of unrebutted costs. FWP agreed that this Court miscalculated these costs and that remand was appropriate.

On cross-appeal, FWP argued that the Court erred by interpreting the Lease as excluding above-ground foundation costs from the meaning of "full replacement cost" under the Lease, in basing its replacement cost calculation off of a repair estimate rather than a replacement estimate, and in reducing its attorneys' fees. The Eighth Circuit rejected these arguments, too. Accordingly, the Court finds that a 25% reduction in fees

---

[2] Mr. Ney billed 11.6 hours at a rate of $505 and 9.1 hours at a rate of $515, so the Court reduces the total by $2,264.50; the paralegals billed 2.8 hours at a rate of $115 and 0.8 hours at a rate of $120, so the Court further reduces the total by $148.

is appropriate to avoid an excessive award considering FWP's lack of success on its cross-appeal. This results in a total award of $143,592.75.

FWP also seeks $1,038.37 in travel expenses related to oral argument. Nilfisk does not specifically object, and the Court concludes these expenses are reasonable and within the scope of the Lease and Guaranty's fee provisions. Accordingly, the Court awards FWP a total of $144,631.12 in attorneys' fees and expenses on appeal.

### III.  CONCLUSION

For these reasons, the damages award to FWP is hereby adjusted to $14,590,279.16, and FWP is entitled to recover $144,631.12 in appellate attorneys' fees and expenses, (plus the previously awarded trial court fees and costs in the sum of $119,235.40).   An Amended Judgment will issue.

**IT IS SO ORDERED** on this 30th day of March, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE